UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

THOMAS J. MCFARLAND, JR.                    CIVIL ACTION NO. 25-CV-1279

VERSUS                                                    JUDGE

CHRIS HAMMONTREE                          MAGISTRATE JUDGE

## COMPLAINT

THE COMPLAINT OF Thomas J. McFarland, Jr., a major citizen of the State of Louisiana who resides in Webster Parish, Louisiana, who respectfully avers as follows:

### JURISDICTION AND VENUE

1.

This action arises under the Civil Rights Act of 1871 (42 USC §§ 1983, 1988) as later more fully appears, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

2.

This Court has jurisdiction under 28 USC § 1331 and § 1343.  The state law claims for relief are within the supplemental jurisdiction of this Court, pursuant to 28 USC § 1367.

3.

All events referred to in this Complaint occurred within the Western District of Louisiana.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

### PARTIES

4.

Plaintiff Tom McFarland is a competent adult, who was a non-violent male and posed no threat to anyone but fell prey to wrongful arrest, excessive force, and police

brutality which was perpetrated by defendant Chris Hammontree of the Minden Police Department on August 30, 2024.

5.

Defendant Chris Hammontree is a citizen of the State of Louisiana, and, upon information and belief, a resident of Webster Parish, Louisiana.  At the time of incident at issue, Hammontree was a police officer employed by the Minden, Louisiana Police Department.  At the time of the filing of this complaint, Hammontree had been relieved of his duties with the Minden Police Department.

6.

At all times pertinent hereto, Hammontree, in doing all of the things alleged, acted under color of their authority as a police officer as such and under color of the statutes, regulations, customs, and usages of the State of Louisiana and the town of Minden, Louisiana.

7.

Defendant Hammontree is being sued herein in his individual capacity.

**FACTS**

8.

At the time of the incident at issue in this lawsuit, Mr. McFarland was a 70 year-old United States veteran, with no criminal record.

9.

On the afternoon of August 30, 2024, Mr. McFarland was in his yard in Minden, Louisiana, burning a fallen tree.  At approximately 2:45 p.m., Mr. McFarland went inside his home to grab a beverage and get his dog.  Mr. McFarland exited his home and walked

over to his barn, which was also on his property.  Simultaneously, Officer Hammontree pulled over a motorist for a traffic stop.  The traffic stop occurred on Mr. McFarland's property, without his consent.

10.

The following events were captured on video, which is attached as Exhibit A to this complaint:  Mr. McFarland's dog, Sterling, noticed the commotion of the traffic stop and wandered towards it.  Mr. McFarland followed, calling for his dog.  As Mr. McFarland's dog approached Officer Hammontree in a friendly manner, Mr. McFarland walked towards Officer Hammontree and the dog, calling for Sterling to return to him.  As Mr. McFarland approached the dog to retrieve him, but never getting with 10 feet of Officer Hammontree, the following exchange occurred between Mr. McFarland and Officer Hammontree:

| | |
|---|---|
| Hammontree: | Stay over there. |
| McFarland: | No, I can come over here.  This is my . . . |
| Hammontree: | Stay over there. |
| McFarland: | No.  I am . . . |
| Hammontree: | BACK UP! |
| McFarland: | What are you going to do?  Shoot me? |
| Hammontree: | BACK UP! |
| McFarland: | I own this property. |
| Hammontree: | BACK UP! |
| McFarland: | I am not within ten feet of you. |
| Hammontree: | BACK UP! |
| McFarland: | I am not within ten feet of you. |

3

Hammontree:          Put your hands behind your back.  You're under arrest.

McFarland:           For what?

Hammontree:          Put your hands behind your back.  You're under arrest.

Officer Hammontree then aggressively approached Mr. McFarland and began manhandling him, throwing Mr. McFarland to the ground.

11.

Officer Hammontree violently slammed Mr. McFarland to the ground with a leg sweep and armbar takedown.

12.

A second video, attached to this complaint as Exhibit B, partially depicts what Officer Hammontree did to Mr. McFarland after slamming him to the ground.  That video shows Officer Hammontree sitting on top of Mr. McFarland.  Mr. McFarland is lying on his right side, with his right arm pinned underneath him.  Officer McFarland repeatedly yells at Mr. McFarland to put his right arm behind his back, but Mr. McFarland is unable to comply because his right arm is pinned beneath his body.  Mr. McFarland tells Officer Hammontree: "You're going to break my arm."  Officer Hammontree responds: "If you don't put your hand behind your back, I am going to break it off."  As Officer Hammontree continues to apply downward force to Mr. McFarland's body, rendering Mr. McFarland unable to comply with the command to put his arm behind his back, Mr. McFarland again tells Officer Hammontree that is unable to comply due to the position that Officer Hammontree has him in, at one point saying: "I'm not Houdini."  Eventually, Officer Hammontree decreases the pressure on Mr. McFarland's body, enabling Mr. McFarland

4

to comply with the Officer's Hammontree's command.  There are also six police body-cam videos which show relevant events attached hereto as Exhibit C-1 through C-6.

13.

Mr. McFarland was taken from the scene to a hospital via ambulance due to the injuries inflicted by Officer Hammontree.

14.

At the time Mr. McFarland was seized by Officer Hammontree, he had committed no crime and Officer Hammontree possessed no probable cause that Mr. McFarland had committed any crime.

15.

At no time, either before, during, or after his arrest, did Mr. McFarland present any threat of harm (immediate or otherwise) to Officer Hammontree or to any other person.

16.

At the hospital, Mr. McFarland was treated for his injuries from Officer Hammontree's unnecessary, improper, and excessive use of force against him.  When Mr. McFarland was released from the hospital, he was again handcuffed by Minden police officers, who transported him to the Minden Police Department headquarters, where he was booked and jailed.  Mr. McFarland remained jailed until his bail was posted, some time later.

17.

Mr. McFarland was charged with a violation of Louisiana Revised Statutes 14:329, entitled "Interfering With a Law Enforcement Investigation" and Louisiana Revised

Statutes 14:108, entitled "Resisting an Officer."  This latter charge is known by the common parlance as "resisting arrest."

18.

In August of 2025, the prosecutor orally moved to dismiss the charges against Mr. McFarland prior to any plea.  The judge orally granted the prosecutor's motion, dismissing the charges against Mr. McFarland.

19.

Louisiana Revised Statutes 14:329, entitled "Interfering With a Law Enforcement Investigation," reads as follows:

A.    Interfering with a law enforcement investigation is the intentional interference or obstruction of a law enforcement officer conducting investigative work at the scene of a crime or the scene of an accident by refusing to move or leave the immediate scene of the crime or the accident when ordered to do so by the law enforcement officer when the offender has reasonable grounds to believe the officer is acting in the performance of his official duties.

B.    For the purposes of this Section, "law enforcement officer" means any commissioned police officer, sheriff, deputy sheriff, marshal, deputy marshal, correctional officer, constable, wildlife enforcement agent, state park warden, livestock brand inspector, forestry officer, or probation and parole officer.

C.    Whoever violates the provisions of this Section shall be fined not more than five hundred dollars, imprisoned for not more than six months, or both.

20.

Louisiana Revised Statutes 14:108, entitled "Resisting an Officer," reads as follows:

A.    Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or

6

court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

B.     (1)     The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:

    (a)     Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.

    (b)     Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.

    (c)     Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

    (d)     Congregation with others on a public street and refusal to move on when ordered by the officer.

    (e)     Knowing interference with a police cordon resulting from the intentional crossing or traversing of a police cordon by an unauthorized person or an unmanned aircraft system (UAS). The cordoned area includes the airspace above the cordoned area.

    (i)     For purposes of this Subparagraph, "police cordon" means any impediment or structure erected or established by an officer for crowd or traffic control, or to prevent or obstruct the passage of a person at the scene of a crime or investigation.

    (ii)     "Impediment or structure" includes but is not limited to crime scene tape, rope, cable, wire or metal barricades, or the posting of uniformed officers or other personnel otherwise identifiable as law enforcement officers.

    (iii)     "Unmanned aircraft system" shall have the same meaning as provided by R.S. 14:337(B).

(iv)    If the flight of a UAS into the cordoned area endangers the public or an officer's safety, law enforcement personnel or fire department personnel are authorized to disable the UAS.

(2)    The word "officer" as used herein means any peace officer, as defined in R.S. 40:2402, and includes deputy sheriffs, municipal police officers, probation and parole officers, city marshals and deputies, and wildlife enforcement agents.

C.    Whoever commits the crime of resisting an officer shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.

21.

As is set out in more detail below, Mr. McFarland clearly did not violate Louisiana Revised Statute 14:329 or Louisiana Revised Statute 14:108 and Officer Hammontree did not possess any probable cause to believe that Mr. McFarland had violated Louisiana Revised Statute 14:329 or Louisiana Revised Statute 14:108 prior to or at the time he was seized.

## COUNT I – 42 U.S.C. § 1983 CLAIM FOR WRONGFUL ARREST AND/OR SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

22.

The preceding paragraphs are incorporated by reference.

23.

As a result of the events of August 30, 2024, Mr. McFarland was arrested and jailed for a crime that he did not commit.

24.

The conduct of Officer Hammontree violated Mr. McFarland's clearly established right to be free from an unreasonable seizure under the Fourth Amendment of the United States Constitution, as secured by 42 U.S.C. §§ 1981, 1983, 1985, and 1988. "There can be no doubt that the right not to be arrested absent probable cause [is] clearly established . . . ." *Alexander v. City of Round Rock*, 854 F.3d 298, 307 (5th Cir. 2017). *See also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) (("The Fourth Amendment right to be free from false arrest—arrest without probable cause—[is] clearly established...."); and *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right.").

25.

Acting under color of state law, Officer Hammontree knowingly, recklessly, and with deliberate indifference to and callous disregard for Mr. McFarland's rights, unlawfully arrested Mr. McFarland in the absence of probable cause and though Mr. McFarland had committed no crime and defendant lacked any probable cause to arrest Mr. McFarland.

26.

Defendant Hammontree's arrest of Mr. McFarland was both objectively and subjectively unreasonable, given the circumstances. No reasonably competent police officer would have believed that probable cause existed to justify the arrest of Mr. McFarland.

27.

On August 30, 2024, Mr. McFarland committed no crime. On August 30, 2024, Officer Hammontree did not possess probable cause to arrest Mr. McFarland for any

crime. Specifically, Office Hammontree did not possess any probable cause to arrest Mr. McFarland for the crime of "interfering with a law enforcement investigation," as that crime is established by Louisiana R.S. 14:329 or for the crime of "resisting an officer," as that crime is established by Louisiana R.S. 14:108.

28.

To establish that a police officer violated a person's constitutional rights by arresting him, a plaintiff "must show that the officers lacked probable cause." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). "A warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.*

29.

Under Louisiana law, a person commits the offense of "interfering with a law enforcement investigation," if he intentionally interferes with or obstructs a law enforcement officer conducting investigative work "at the scene of a crime or the scene of an accident." This incident occurred on Mr. McFarland's property, which was neither the scene of a crime or the scene of an accident.

30.

"[U]nder Louisiana law, a person commits the offense of resisting arrest only if he resists a 'lawful arrest;' that is, an arrest supported by probable cause." *Id*., citing *State v. Lindsay*, 388 So.2d 781, 782 (La. 1980) ("It is a long-established principle in Louisiana law that a citizen has the right to resist an unlawful arrest."). Moreover, "absent probable

cause as of the moment of arrest, no *subsequent* resistance would violate Louisiana law, as the statute only prohibits resisting a '*lawful* arrest.'" *Brown v. Lynch*, 524 Fed.Appx. 69, 74 (5th Cir. 2013).

31.

At the time of Mr. McFarland's arrest (and before and after his arrest), Officer Hammontree lacked any probable cause for the arrest of Mr. McFarland.  As a result of Mr. McFarland' wrongful arrest, Mr. McFarland has suffered physical injuries, emotional injuries, and severe damage to his sterling, hard-earned reputation.

## COUNT II – 42 U.S.C. § 1983 CLAIM FOR USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

32.

The preceding paragraphs are incorporated by reference.

33.

The conduct of Officer Hammontree violated Mr. McFarland's clearly established right to be free from the use of excessive force against him under the Fourth Amendment of the United States Constitution, as secured by 42 U.S.C. §§ 1981, 1983, 1985, and 1988.  "As of 2013, it was clearly established that "violently slam[ming] an arrestee who is not actively resisting arrest" is a constitutional violation." *Tucker v. City of Shreveport*, 998 F.3d 165, 175 (5th Cir. 2021).  See also *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018)] (citing *Ramirez v. Martinez*, 716 F. 3d 369, 377–78 (5th Cir. 2013)]; *Newman v. Guedry*, 703 F.3d 757, 762–63 (5th Cir. 2012); *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)).  Passive resistance does not authorize violent force on an officer's

part. *Deville v. Marcantel*, 567 F.3d 156, 167–68 (5th Cir. 2009). As a result, the Fifth Circuit has repeatedly denied qualified immunity in cases in which "officers face verbal resistance but no fleeing suspect." *Id.*, citing *Bone v. Dunnaway*, 657 F. App'x 258, 263 (5th Cir. 2016) (per curiam) (citing *Deville*, 567 F.3d at 169; *Bush*, 513 F.3d at 502; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 734, 740 (5th Cir. 2000)).

34.

Acting under color of state law, Officer Hammontree knowingly, recklessly, and with deliberate indifference to and callous disregard for Mr. McFarland's rights, unlawfully subjected Mr. McFarland to unreasonable and excessive force, even though Mr. McFarland had committed no crime and defendant lacked any probable cause to arrest Mr. McFarland.

35.

As a result of Officer Hammontree's use of excessive force on him, Mr. McFarland sustained bodily injuries, psychological injuries, and emotional injuries.

36.

Officer Hammontree applied the following objectively unreasonable and excessive force to Mr. McFarland: (1) grabbing Mr. McFarland, (2) forcibly slamming Mr. McFarland to the ground, and (3) putting all of his weight on Mr. McFarland while he was on the ground and continuing to manhandle Mr. McFarland, among other things.

37.

The amount of force used by Officer Hammontree was objectively unreasonable. Factors to be considered in evaluating the objective reasonableness of force applied include "the severity of the crime at issue, whether the suspect poses an immediate threat

to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  All of these factors overwhelmingly lead to the conclusion that the force used by Officer Hammondtree was objectively unreasonable.

38.

As to the "severity of the crime" factor, Mr. McFarland had committed no crime at the time Officer Hammontree used force against him.   This factor weighs overwhelmingly in Mr. McFarland's favor.

39.

As to the "immediate threat to the safety of the officers or others" factor, at the time Officer Hammontree used force against Mr. McFarland, Mr. McFarland was not an immediate threat to the safety of the officers or anyone else.  Mr. McFarland was on his own property and was only trying to retrieve his dog. In addition, prior to their use of force, Mr. McFarland had engaged Officers Hammontree politely and had informed Officer Hammontree that he was only trying to retrieve his dog.   This factor weighs overwhelmingly in Mr. McFarland's favor.

40.

As to the "actively resisting arrest or attempting to evade arrest by flight", at the time Officer Hammontree used force against Mr. McFarland, he was not actively resisting arrest or attempting to evade arrest by flight.  Prior to applying force to Mr. McFarland, Officer Hammontree did not make any attempt to negotiate with Mr. McFarland or deescalate the situation before applying great force.   Thus, Mr. McFarland was not actively resisting arrest or attempting to evade arrest by flight.   Moreover, even if Mr. McFarland had been actively resisting arrest, he was well within his rights to do so

because his arrest was unlawful under Louisiana law.  This factor weighs overwhelmingly in Mr. McFarland's favor.

41.

The force applied to Mr. McFarland by Officer Hammontree was both excessive and objectively unreasonable.

42.

As result of Officer Hammontree's use of excessive force on Mr. McFarland, Mr. McFarland suffered serious, *i.e.*, not *de minimis*, physical and emotional injuries.  Mr. McFarland's sustained severe physical injury and severe psychological injury as a result of Officer Hammontree's excessive use of force and and he continues to be treated for injuries sustained in this incident.  However, because "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive use of force," the *de minimis* injury doctrine as it previously existed is no longer in play.  *Alexander v. City of Round Rock*, 854 F.3d 298, 310 (5th Cir. 2017).

## COUNT III – STATE LAW CLAIM FOR FALSE ARREST AND MALICIOUS PROSECUTION

43.

The preceding paragraphs are incorporated by reference.

44.

Officer Hammontree was personally and directly involved in the arrest of Mr. McFarland and knew, at the time the arrest was made, that his arrest of Mr. McFarland was wrongful.

14

45.

Officer Hammontree's actions were in violation of clearly established constitutional law, and no reasonable law enforcement officer would have believed that the his actions were lawful.

46.

As a direct and proximate result of defendants' actions, Mr. McFarland was wrongly arrested, charged, detained, physically abused, and suffered the other grievous injuries and damages set forth herein.

## COUNT IV – STATE LAW CLAIM FOR BATTERY

47.

The preceding paragraphs are incorporated by reference.

48.

Officer Hammontree's conduct, set forth in detail above, constitute an unlawful battery under Louisiana law.

49.

Mr. McFarland suffered physical, psychological, and emotional damages as a result of this battery.

## COUNT V – STATE LAW CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50.

The preceding paragraphs are incorporated by reference.

51.

The above-described actions by defendants constitute extreme and outrageous conduct that caused Mr. McFarland severe emotional distress.

52.

The acts described above exceed all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community.

53.

Officer Hammontree either desired to inflict severe emotional distress on Mr. McFarland or knew that severe emotional distress would be certain or substantially certain to result.

**COUNT VI – CLAIM FOR VIOLATIONS OF THE LOUISIANA CONSTITUTION**

54.

The preceding paragraphs are incorporated by reference.

55.

The Louisiana State Constitution, like the United States Constitution, guarantees a person's right to be secure in his person and effects from unreasonable seizure, to equal protection of the law, to due process of law, and to additional rights.

56.

By reason of the same intentional, malicious, reckless, and deliberate conduct that violated Mr. McFarland's rights under the United States Constitution, defendants' conduct violated the rights guaranteed to Mr. McFarland under the Louisiana State Constitution.

## JURY DEMAND

57.

Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment, Mr. McFarland requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Thomas J. McFarland, Jr. demands a judgment for compensatory damages (including general damages [physical pain and suffering, emotional distress, loss of enjoyment of life, etc.], special damages [medical bills and legal bills in the criminal proceeding, etc.], punitive damages, attorneys' fees, and costs, all as available by relevant statutes and laws, judicial interest, and such other and further relief as this Court may deem appropriate.

**AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC**

 /s/ J. Todd Benson
J. Todd Benson, T.A.
La Bar Roll No. 23648
333 Texas Street, Suite 1400
P.O. Box 1764 (71166-1764)
Shreveport, Louisiana 71101
Telephone: (318) 227-3500
Facsimile:  (318) 227-3820
Email: toddbenson@arklatexlaw.com

ATTORNEY FOR THOMAS J. MCFARLAND, JR.